## CONSTANCE B. PRICE, APPELLANT, *v.* WALTER J. PRICE AND OTHERS, RESPONDENTS.

*Dower — when a woman is entitled to it although her marriage has been annulled on account of her husband having had a former wife whom he believed to be dead —* 3 R. S. (6th ed.), 964, sec. 14.

July 1, 1865, in the State of New York, Walter W. Price married the plaintiff. In April, 1839, he had married one Susannah Butler, who remained in England when he emigrated to this country. At the time of the second marriage Price did not know, nor for more than five successive years prior thereto had he known, that his first wife was living, and the second marriage was contracted in good faith and with the full belief of both parties thereto that the former wife was dead. In 1874 Price obtained a judgment dissolving the marriage with this plaintiff on the ground that his former wife was living and declaring it to be void from the time of the entry of the said judgment.

In an action by the plaintiff to recover her dower in real estate owned by Price during the time their marriage continued in force:

*Held,* that she was entitled to recover it.

APPEAL from a judgment in favor of the defendants, entered upon the report of a referee.

*Charles Jones, Geo. H. Starr* and *Thomas Hooker,* for the appellant.

*Hughes & Northup,* for W. J. Price.

*James R. Marvin,* for defendant Little.

*Bristow, Peet & Opdyke,* for Frank N. Price and others.

*S. Brown,* for Lillie M. Price.

DANIELS, J. :

The action was brought for the recovery of dower in real estate of which Walter W. Price was seized during his lifetime. He intermarried with the plaintiff on the 1st of July, 1865. He had been previously married on the 23d of April, 1839, to Susannah Butler, who remained in England upon his emigration to this country. More than five years had elapsed before his marriage with the plaintiff since he had heard that his former wife was living. After his marriage with the plaintiff he continued to live and cohabit with

her as his wife, until after the 20th of August, 1870. During that period two daughters were born to the parties, who are still living. In 1873, Walter W. Price commenced an action against the plaintiff to obtain the judgment of this court, dissolving his marriage with her and declaring it to be void, and that the two daughters should be declared to be legitimate and entitled to succeed to personal and real estate, the same as though they had been born in lawful wedlock. Judgment was recovered in this action in April, 1874. It was found as a fact by the court, before which the trial took place and upon whose decision the judgment was entered, that on the 1st day of July, in the year 1865, in the city, county and State of New York, the plaintiff, Walter W. Price, and the defendant, Constance B. Price, were married ; that at the time of such marriage between the plaintiff and the defendant, the plaintiff, Walter W. Price, did not know, and for more than five successive years prior thereto, did not know and had not known that his absent wife, the said Susannah, was living, and the said marriage between plaintiff and defendant was contracted in good faith and with the full belief of the parties thereto, both plaintiff and defendant, that the former wife of the plaintiff, the said Susannah, was dead. And as a conclusion of law from this fact the court held that the said marriage between the plaintiff, Walter W. Price, and the defendant, Constance B. Price, is void, but is void only from the time that its nullity is hereby pronounced, to wit, the date of the decree to be entered upon this decision. The judgment itself adjudged that the marriage between the plaintiff, Walter W. Price, and the defendant, Constance B. Price, made and entered into by them on or about the first day of July, 1865, shall be and the same is hereby pronounced null and void, but the said marriage shall be, and is hereby declared void only from the time that its nullity is hereby pronounced, to wit, from and after the date of this judgment.

This judgment was directed and recovered in this form by virtue of the provisions of the statute declaring that, if any person whose husband or wife shall have absented himself, or herself, for the space of five successive years, without being known to such person to be living during that time, shall marry during the lifetime of such absent husband or wife, the marriage shall be void only from the time that its nullity shall be pronounced by a court of competent

authority. (3 R. S. [6th ed.], 148, § 5.) While the preceding section declared certain specified marriages to be void, this marriage was saved from its operation and effect, and consequently was not designed by the statute to be characterized as a void marriage. In declaring and defining what marriages should be unlawful and punishable, an exception also was made of the marriage of any person whose preceding husband or wife should have been absent for five successive years without being known to such person within that time to be living. (3 R. S. [6th ed.], 964, § 14.)

These provisions by their language and effect sanction the marriage of these parties under the circumstances made to appear. It was at the time when it was solemnized a lawful marriage, and continued to be so to the time when its nullity was pronounced by the judgment already mentioned. From that time, and that time alone, did the marriage of these parties become void and cease to be operative. The judgment which was entered has been made conclusive evidence as to its effect. (3 R. S. [6th ed.], 155, § 50.) And it in no manner changed or disturbed the relations existing between these persons and arising out of their marriage, until the time when it was entered, and then it was wholly prospective in its effects. The statutes of the State were enacted in such a form upon this subject that they permitted this marriage lawfully to take place. The enactments proceeded manifestly upon the presumption that after the absence of five successive years without being heard of, the former wife might well be assumed to be dead and her husband at liberty to enter into another matrimonial relation in reliance upon that circumstance. They sanction such an act on his part, and the marriage which he entered into with the plaintiff was consequently a lawful marriage, and it continued to be so certainly until the time when it was discovered that the preceding wife was still living. And the judgment upon that discovery annulled the marital relations so formed only from the time when it was rendered and entered.

From the time of the plaintiff's marriage to the entry of the judgment she consequently remained the lawful wife of Walter W. Price.

During that time he became the owner of valuable real estate, and it was for the recovery of her dower in that estate, that this action was prosecuted by her. At the time when he acquired it

she was under these provisions of the statute his wife, and after-
wards remained so until the entry of the judgment prospectively
only annulling the marriage, and these facts were sufficient in judg-
ment of law to entitle her to dower in this estate. Upon this point
the case cannot be materially distinguished from that of *Wait* v. *Wait*
(4 Comst., 95) where it was held that a wife who had obtained a divorce
from her husband because of his adultery, was still entitled to dower
in real property owned by him during the time the marriage con-
tinued in force. A different conclusion had been reached by the
General Term of the Supreme Court. *Wait* v. *Wait* (4 Barb., 192.)
That decision proceeded upon the conviction that the law required
the wife to sustain that relation to the husband at the period of his
decease to entitle her to dower in his real estate. This was combat-
ted by a dissenting opinion of WILLARD J., whose conclusions were
sustained by the determination of the Court of Appeals. And in the
same case that tribunal finally held, that inasmuch as the marriage
remained operative and binding upon the parties to the time when
.he decree for the divorce was rendered, that the wife was not
deprived of her dower in the real property vested in the husband
before the recovery of the decree. The decision was substantially
based upon the ground that as the marriage was entirely binding
upon the parties, up to the time when the decree was entered, the
wife was entitled to be endowed in the property of the husband,
the title to which he obtained before that time. The right, it was
held, resulted from the circumstance that at the time of the acqui-
sition of the estate, the plaintiff became vested with a contingent
right to her dower depending only upon the fact of her surviving
the person who was then her husband. And this rule seems to be
as applicable to the case of the plaintiff, as it was to the wife in the
case of *Wait* v. *Wait*. For her marriage was lawful at the time
when her husband acquired the property in controversy.

No provision inserted in the statutes has deprived her of this right.
That cannot be held to be done, even by implication, from the
section declaring the children of a marriage contracted in good faith,
with the full belief that the former husband or wife was dead,
capable of inheriting from the party competent to contract (3 R.S.
[6th ed.], 154, § 37) any more than the same result could be
attributed to the case of a decree dissolving a marriage because of

the misconduct of the husband, by reason of the provision in the statute declaring that the legitimacy of children born or begotten before the commission of the offense charged shall not be affected by the decree. (3 R. S. [6th ed.], 156, § 57.)

It has been urged that the common law deprives the wife of her dower in a case of the character of that in the present action. But that seems to be a misapprehension. For in those cases in which the common law deprived the wife of her dower because of a decree of divorce, the decree had the effect of annulling the marriage from the beginning. The result of that was to render the issue illegitimate and also deprive the wife of her dower. (1 Sharswood's Blackstone, 440.) The same subject was fully considered in the final decision of *Wait* v. *Wait*, and this view of the common law affecting this subject was maintained by the court. As that case was determined, it is only where the decree annuls the marriage from its solemnization that it can be attended with the effect of depriving the wife of her right to dower in the property owned by her husband during the existence and continuance of the marriage. For this reason the determination of the case of *Boddington* v. *Clariat* (L. R., 22 Ch. Div., 597) is not applicable to this case. There the annuity which was claimed was given by the will to the wife, so long as she should remain the widow of the testator, and as the marriage had been annulled by a decree previous to his decease, it was held that she did not become his widow and could not therefore claim the legacy. The right of the wife in this action is subjected to no such restriction, but arises out of the facts that her marriage was sustained by the statutes as legal at the time when the husband obtained the title to this property, and has never been declared to be otherwise by any judgment or proceeding whatever. On the contrary, the judgment which was entered, rendered the marriage void only from the time of its entry, and necessarily therefore assumed its validity as it was required to do up to that time. And that was sufficient to maintain the right of the plaintiff to recover in this action. She was the innocent party if there was culpability anywhere, and for the fault or misconduct of her husband the law should not permit a forfeiture of her rights. Good morals as well as substantial justice also combine in favor of maintaining that right.

The fact that the husband's estate may in this manner be sub

jected to the right of more than one person to dower in it cannot be allowed to operate to the prejudice of the plaintiff. That may very well be as the law is now administered in this State. For a wife obtaining a divorce from her husband will be entitled to dower in his estate, and so would another who might survive him who should be married to him afterwards in one of the other States or by the permission of the court in this State. In this manner not only two wives might lawfully claim dower, but if their number in a similiar manner should be still further increased, each of them would be permitted to assert and maintain the same claims.

That is not what the law considers for the determination of such an action. The question is one merely of title, and where a valid marriage has been contracted and that has been afterwards terminated by an event subsequently arising, as this was by the discovery of the fact that the first wife was still living, the law will not deprive the second wife of her estate as dowress in the husband's property. The effect of the discovery of the fact that the first wife was still living could be no further operative than to justify an annullment of the second marriage after that time.

And that was the effect that was given to it by the judgment recovered against the plaintiff. Upon the facts found by the referee her complaint should not have been dismissed, but her action should have been sustained. The judgment which was entered should therefore be modified, and a judgment entered, upon the facts found, for the recovery by the plaintiff of her dower in the property mentioned in the complaint. And she should also have the usual costs of the appeal as well as the costs and allowances of her action.

DAVIS, P. J., and BRADY, J., concurred.

Judgment reversed and judgment directed in favor of plaintiff as stated in opinion, with costs.